**O'HAGAN MEYER LLP**
EFTHALIA S. ROFOS, SB# 309065
E-Mail: TRofos@ohaganmeyer.com
SPYROS STAIKOS, SB#354848
E-Mail: SStaikos@ohaganmeyer.com
4695 MacArthur Court, Suite 900
Newport Beach, California 92660
Telephone: 949.519.2080
Facsimile: 949.519.2110

Attorneys for Defendant,
WESTERN TRAFFIC CONTROL, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

ELIZABETH PADILLA and ARMANDO BERNAL, as aggrieved employees, and on behalf of all other aggrieved employees under the Labor Code Private Attorneys' General Act of 2004,

Plaintiffs,

vs.

WESTERN TRAFFIC CONTROL, INC., a California corporation; and DOES 1 through 100, inclusive,

Defendants.

Case No.: 3:25-CV-07642

(Sonoma County Superior Court Case No. 25CV04767)

**DEFENDANT WESTERN TRAFFIC CONTROL, INC.'S NOTICE OF REMOVAL OF CIVIL ACTION UNDER 28 U.S.C. §1441(c) [FEDERAL QUESTION JURISDICTION]**

*[Filed concurrently with Civil Case Cover Sheet; Declaration of Spyros Staikos, Esq.; and Certificate of Interested Parties]*

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

# TABLE OF CONTENTS

**I.** COMPLAINT AND TIMELINESS OF REMOVAL .................................. 6
II. VENUE .................................................................................. 7
III. DIVISIONAL ASSIGNMENT ......................................................... 8
IV. JURISDICTION ....................................................................... 8
A. The Majority of Plaintiffs' Claims on Behalf of Themselves as Unionized Alleged Aggrieved Employees Expressly Involve Rights Existing Solely Under the Laborers CBA ........................................................ 12
B. Resolution of Other of Plaintiffs' Claims on Behalf of Themselves as Unionized Allegedly Aggrieved Employees Will Require Substantial Interpretation of the Laborers CBA and Its Various Provisions ................ 22
C. The Court Has Original Jurisdiction over Plaintiffs' PAGA Claim Because It Has Original Jurisdiction over the Predicate Claims ............................... 23
V. SUPPLEMENTAL JURISDICTION ................................................... 24
VI. TIMELINESS OF REMOVAL ......................................................... 24
VII. NOTICE OF REMOVAL TO ADVERSE PARTY AND STATE COURT 25
VIII. CONCLUSION ........................................................................ 25

## TABLE OF AUTHORITIES

**Cases**


Alaska Airlines Inc. v. Schurke,
898 F.3d 904, 951 (9th Cir. 2018) .......... 9

*Allis-Chalmers Corp. v. Lueck,*
571 U.S. 202, 211 (1985) .......... 9

*Buck v. Cemex, Inc.,*
No. 1:13-CV-00701-LJO, 2013 U.S. Dist. LEXIS 124111, at *17 (E.D. Cal. Aug. 29, 2013) .......... 23

*Burnside v. Kiewit Pac. Corp.*,
491 F.3d 1053, 1059 (9th Cir. 2007) .......... 8

*Caterpillar Inc. v. Williams,*
482 U.S. 386, 393 (1987) .......... 9, 10

*Coria v. Recology, Inc.*,
63 F.Supp.3d 1093, 1099, (N.D.Cal. Aug. 7, 2014) .......... 18, 23

*Curtis v. Irwin Indus., Inc.*,
913 F.3d 1146, 1155 (9th Cir. 2019) .......... 8, 9, 10

*Doijode v. Sears*,
2006 U.S. Dist. LEXIS 3186, *8 .......... 23

*Firestone v. Southern Cal. Gas. Co.*,
219 F.3d 1063, 1065 (9th Cir. 2000) .......... 8

*Franchise Tax Bd. v. Constr. Laborers Vacation Trust,*
463 U.S. 1, 23 (1983) .......... 9

*Giles v. Canus Corp.*,
No. 22-CV-03097-MMC, 2022 U.S. Dist. LEXIS 146789, at *14 (N.D. Cal. Aug. 16, 2022) .......... 19, 20

*Hayden v. Reickerd,*
957 F.2d 1506, 1509 (9th Cir. 1991)....................10

*Kobold v. Good Samaritan Reg'l Med. Ctr.*
(9th Cir. 2016) 832 F.3d 1024, 1032....................16

*Lingle v. Norge Div. of Magic Chef Inc.*,
486 U.S. 399, 411 (1988)....................8

*Lippitt v. Raymond James Fin. Servs., Inc.*
340 F.3d 1033, 1041 (9th Cir. 2003)....................10

*Medrano v. Genco Supply Chain Solutions*,
2011 U.S. Dist. LEXIS 2315, *46-48....................23

*Metro. Life Ins. v. Taylor,*
481 U.S. 58, 65 (1987)....................9

*Moore-Thomas v. Alaska Airlines, Inc.,*
553 F.3d 1241 (9th Cir. 2009)....................10

*Murphy Bros. v. Michetti Pipe Stringing*,
526 U.S. 344, 347-348....................23

*Newberry v. Pac. Racing Ass'n,*
854 F.2d 1142, 1146 (9th Cir. 1988)....................9

*Schroeder v. Trans World Airlines, Inc.,*
702 F.2d 189, 191 (9th Cir. 1983)....................10

*Scott v. Machinists Automotive Trades Dist. Lodge No. 190,*
827 F.2d 589, 594....................15, 18, 19, 20

**Statutes**

28 U.S.C. § 1367(a)....................23

28 U.S.C. § 1446(b)(3)....................23

Cal. Code Regs. tit. 8, § 11160 11(E)....................18

Cal. Lab. Code § 514....................16

Labor Management Relations Act ("LMRA"),
29 U.S.C. § 185....................7, 8, 10

LMRA, 29 U.S.C. § 152(2) .......... 10

National Labor Relations Act, 29 U.S.C. § 152(5) .......... 10

**TO THE HONORABLE COURT, TO PLAINTIFFS AND TO THEIR ATTORNEYS OF RECORD**:

PLEASE TAKE NOTICE that Defendant WESTERN TRAFFIC CONTROL, INC., a California corporation ("Defendant" or "Western Traffic"), hereby removes the above-captioned action from the Superior Court of California, County of Sonoma, to the United States District Court for the Northern District of California pursuant to 28 U.S.C. §§ 1331 and 1441(c) based on federal question jurisdiction.

## I. <u>COMPLAINT AND TIMELINESS OF REMOVAL</u>

1. On July 8, 2025, Plaintiffs ELIZABETH PADILLA and ARMANDO BERNAL, as individuals and on behalf of all others similarly situated, (collectively "Plaintiffs"), filed their Complaint in the Superior Court of the State of California in and for the County of Sonoma, entitled *ELIZABETH PADILLA, and ARMANDO BERNAL, as individuals and on behalf of all others similarly situated v. WESTERN TRAFFIC CONTROL, INC., a California Corporation; and DOES 1 through 100, inclusive,* Case No. 25CV04767, against defendant WESTERN TRAFFIC CONTROL, INC., a California corporation; and DOES 1 through 100, inclusive. A true and correct copy of the Complaint is attached hereto as **Exhibit 1**. [*See* Declaration of Spyros Staikos in Support of Removal ("Staikos Decl."), at ¶ 2] The Complaint alleges a single Representative PAGA Action pursuant to the Labor Code Private Attorneys' General Act of 2004 for civil penalties under Labor Code Sections 210, 226.3, 558, 1174.5, 1197.1, and 2699 ("PAGA"). Under such a representative action, Plaintiffs make allegations against Defendant for: (1) failure to pay overtime wages; (2) failure to pay minimum wages; (3) failure to provide meal periods; (4) failure to provide rest periods; (5) waiting time penalties; (6) wage statement violations; (7) failure to timely pay wages; (8) failure to indemnify; (9) failure to pay interest on deposits; (10) violation of labor code § 227.3 and; (11) unfair competition. A true and correct copy of Plaintiffs' Summons is attached hereto as **Exhibit 2**. A true and correct copy of the Civil Cover Sheet filed by Plaintiffs in relation to the

Complaint is attached hereto as **Exhibit 3**. Western Traffic Control was sub-served on July 28, 2025, and the date of mailing of the Summons and Complaint was January 29, 2025. Plaintiffs filed a Proof of Service for the Complaint on July 29, 2025. A true and correct copy of the Proof of Service is attached hereto as **Exhibit 4**. The Notice of Assignment and Case Management Conference is not yet in counsel for Defendant's possession**,** nor was it in the package served on Defendant. Counsel for Plaintiff has not provided Defendant with this information. Counsel from Defendant's firm requested this documentation and will lodge upon receipt. [See Staikos Decl. ¶ 4.]

2. There is a collective bargaining agreement ("CBA") that applied to Plaintiffs during the times mentioned in the Complaint. [*See* Staikos Decl. ¶ 5.] The applicable CBA is the "Northern California AGC/Laborers Master Agreement (2022 through 2027)" (the "Laborers CBA"). [*See* Staikos Decl. ¶ 5, Exhibit A.] The Northern California District Council of Laborers Hiring Hall Local 324 will hereafter be referred to as the "Union."

3. Plaintiffs Elizabeth Padilla and Armando Bernal were members of the Construction & General Laborers' Union Local #324, and as such are Union Members subject to the provisions of the Laborers CBA. [See Staikos Decl. ¶ 6, Exhibit B.]

4. There is an addendum to the Laborers CBA enumerating additional wage and benefit rates depending on the job position and classification of the Union member. It is entitled "2022-2027 Laborers' Master Agreement Associated General Contractors (AGC) Northern California District Council of Laborers Wage & Fringe Benefit Rates" ("Laborers Benefit Rates"). [*See* Staikos Decl. ¶ 7, Exhibit C.]

5. This Notice of Removal is filed within the thirty (30) day limit for removal set forth in 28 U.S.C. § 1446(b)(3) following effectuation of proper service.

## II. VENUE

6. Venue lies in the United States District Court for the Northern District of California, pursuant to 28 U.S.C. §§ 84(c)(3) and 1441(a) because this Court's

territorial jurisdiction includes Sonoma County, California, where the State Court Action was filed and is pending.

## III. DIVISIONAL ASSIGNMENT

7. This Action will be assigned to the San Francisco and Oakland Division of the Northern District of California pursuant to Civil L.R. 3-2(d), as the State Court Action was filed and is pending in Sonoma County, California, and allegedly arose in Sonoma County, California.

## IV. JURISDICTION

8. This Court has original jurisdiction under 28 U.S.C. § 1331, and this case may be removed pursuant to 28 U.S.C. § 1441(a), as it is a civil action that presents a federal question.

9. Federal jurisdiction is proper because the Court has original jurisdiction over Plaintiffs' PAGA claim, as it has original jurisdiction over the underlying labor code violations. Plaintiffs, as unionized employees, assert claims that (a) expressly arise out of or involve a right existing solely under the Laborers CBA or (b) require interpretation of the Laborers CBA. To this extent, Plaintiffs have brought claims completely preempted by federal law per section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185 ("Section 301").

10. PAGA claims are derivative of claims for violations of the California Labor Code. *See, e.g. Curtis v. Irwin Indus.* (9th Cir. 2019) 913 F.3d a1146,1150 n.3. The "distinction between bringing [a] PAGA claim for civil penalties versus bringing a Labor Code claim for wages is irrelevant for the purposes of preemption." *Martinez*, 415 F.Supp.3d 1227, 1234; *see Linebarger v. Graphic Packaging Int'l, LLC* (C.D. Cal. 2020) 2020 WL 1934958 (denying a motion to remand after finding that the Court had federal question jurisdiction over the plaintiff's single PAGA claim premised on Labor Code violations). "To determine whether a claim is preempted under the LMRA, courts look to the underlying character of the claim itself." *Radcliff*, 519 F.Supp.3d 743, 748. Where "[p]laintiffs seek to vindicate labor rights [allegedly]

disregarded by [d]efendant[s] concerning unpaid overtime, unpaid sick leave, unpermitted rest breaks, inaccurate wage statements, and unpaid wages at termination," the "Court looks through the PAGA claim to assess the underlying Labor Code claims." *Martinez*, 514 F.Supp.3d 1227, 1235. A Court "has original jurisdiction over [a p]laintiff's PAGA claim" where the Court "has original jurisdiction over the[] predicate claims." *Radcliff v. San Diego Gas & Elec. Co.* (S.D. Cal. 2021) 519 F.Supp.3d 743, 748. "'To find otherwise would allow for [the] artful pleading of PAGA claims – premised on Labor Code violations – to circumvent congressional intent regarding collective bargaining agreements and preemption.'" *Id*. (quoting *Martinez v. Omni Hotels Mgmt. Corp.* (S.D. Cal. 2021) 2021 WL 196509 at *4 n.3).

11. Under Section 301, "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce…may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." 29 U.S.C. § 185(a); *Firestone v. Southern Cal. Gas. Co.*, 219 F.3d 1063, 1065 (9th Cir. 2000). To ensure uniform interpretations of CBAs, federal law preempts the use of state contract law in collective bargaining agreement interpretation and enforcement. *See Lingle v. Norge Div. of Magic Chef Inc.*, 486 U.S. 399, 411 (1988).

12. A state law cause of action that involves a right existing solely under a CBA is subject to Section 301 preemption. *Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1059 (9th Cir. 2007). When a CBA satisfies a statutory exemption, the CBA is the progenitor for the right at issue and the independent statutory right no longer exists. *Curtis v. Irwin Indus., Inc.,* 913 F.3d 1146, 1155 (9th Cir. 2019).

13. In addition, Section 301 preempts state law claims that substantially depend on interpretation of a CBA. *Curtis,* 913 F.3d at 1155; *Firestone,* 219 F.3d at 1066–67. This is so even if interpretation is required to evaluate an employer's

defense to a state law cause of action. *Curtis,* 913 F.3d at 1152 ("Although normally federal preemption is a defense that does not authorize removal to federal court, Section 301 has such 'extraordinary pre-emptive power' that it 'converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'") (*citing Metro. Life Ins. v. Taylor,* 481 U.S. 58, 65 (1987)). State law claims raised on behalf of union-represented employees that require interpretation of a CBA must be brought pursuant to Section 301. *Allis-Chalmers Corp. v. Lueck,* 571 U.S. 202, 211 (1985). "The preemptive force of [S]ection 301 is so powerful that it displaces entirely any state cause of action for violation of a collective bargaining agreement ... and any state claim whose outcome depends on analysis of the terms of the agreement." *Newberry v. Pac. Racing Ass'n,* 854 F.2d 1142, 1146 (9th Cir. 1988).

14. The fact that a complaint omits mention of a union, a CBA, or the like is insufficient to avoid federal jurisdiction under Section 301. Artfully pleading around a CBA and couching actual federal claims as state law claims cannot avoid Section 301 preemption because "a CBA dispute in state law garb" is preempted by Section 301 notwithstanding the title of the claim. *See*, *e.g., Alaska Airlines Inc. v. Schurke*, 898 F.3d 904, 951 (9th Cir. 2018). An artfully pleaded state law claim is properly "recharacterized" as a federal claim under the complete preemption doctrine, which provides that the preemptive force of Section 301 "converts an ordinary state law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule" and is removable to federal court. *Caterpillar Inc. v. Williams,* 482 U.S. 386, 393 (1987); *Franchise Tax Bd. v. Constr. Laborers Vacation Trust,* 463 U.S. 1, 23 (1983) ("[I]f a federal cause of action completely preempts a state cause of action, any complaint that comes within the scope of the federal cause of action necessarily 'arises' under federal law.").

15. A court may properly look beyond the face of a complaint to determine whether the claims asserted are preempted by Section 301. *See Lippitt v. Raymond*

*James Fin. Servs., Inc.,* 340 F.3d 1033, 1041 (9th Cir. 2003). Also, a court may properly look to the facts stated in the Notice of Removal "to clarify the action a plaintiff presents and to determine if it encompasses an action within federal jurisdiction." *Schroeder v. Trans World Airlines, Inc.,* 702 F.2d 189, 191 (9th Cir. 1983), *overruled in part on other grounds, Moore-Thomas v. Alaska Airlines, Inc.,* 553 F.3d 1241 (9th Cir. 2009).

16. "[F]ederal preemption under Section 301 is an essential component of federal labor policy." *Curtis*, 913 F.3d at 1152.

17. The Union is a labor organization within the meaning of section 2(5) of the National Labor Relations Act, 29 U.S.C. § 152(5), and Section 301.

18. Defendant Western Traffic Control is an "employer" within the meaning of the LMRA, 29 U.S.C. § 152(2).

19. At all times relevant to this action, Defendant Western Traffic Control was an employer employing employees in an industry affecting commerce within the meaning of section 2(7) of the LMRA.

20. As further described below, the California Labor Code violations underpinning Plaintiffs' PAGA claim on behalf of themselves as unionized alleged aggrieved employees are "founded directly on rights created by [a] collective bargaining agreement[]" and/or are substantially dependent on an analysis and interpretation of a CBA. *See Hayden v. Reickerd,* 957 F.2d 1506, 1509 (9th Cir. 1991); *see also, Caterpillar Inc.,* 482 U.S. at 394. Furthermore, the CBA to which Plaintiffs were bound expressly waives the requirements of PAGA. This is pursuant to the statute's carveout for construction industry union members bound to a CBA. Plaintiff's CBA unequivocally prohibits bringing forth any claims pursuant to PAGA. [See Staikos Decl. ¶ 5, Exhibit A, Section 9 ¶ 23]. As such, Plaintiffs' PAGA claim is preempt.

///

///

**A. The Majority of Plaintiffs' Claims on Behalf of Themselves as Unionized Alleged Aggrieved Employees Expressly Involve Rights Existing Solely Under the Laborers CBA**

21. Plaintiffs seek, inter alia, damages predicated on these alleged Labor Code violations: (1) failure to pay overtime wages, (2) failure to pay minimum wages, (3) failure to provide meal periods, (4) failure to provide rest periods, (5) waiting time penalties, (6) wage statement violations, (7) failure to timely pay wages, (8) failure to indemnify, and (9) violation of labor code § 404. *See generally,* Exh. 1.

22. *Hours and Overtime*: The Laborers CBA provides for the hours of covered employees. Section 20A(1) of the Laborers CBA defines a work day generally as "[e]ight (8) consecutive hours (exclusive of meal period) for straight time rates unless the job or project is on a four-ten (4x10) hour day work week in which case the workday shall be ten (10) consecutive hours (exclusive of meal period) at straight time rates." Staikos Decl. ¶ 5, Exh. A. With respect to a work week generally, Section 20A(2) defines it as "on single shift work and on the first shift of a multiple shift operation, five (5) consecutive days of eight (8) consecutive hours (exclusive of meal period), Monday through Friday." *Id*. The Laborers CBA further provides specific rules for varying types of shift work, weekends and holidays, and other considerations that are dependent on the union members' specific job. (*Id*. at Section 20A.) Section 20A of the Laborers CBA is entitled "Overtime Rates, Hours and Working Conditions." *Id*. It prescribes the terms of overtime in a single work day, a work week, a special single shift, on weekends, and on holidays. (*Id*. At Section 20A(1)-(8).)

23. *Wages*: The Laborers CBA provides a carefully crafted set of rules outlining the provision of wages under various situations. Section 10, entitled "Payment of Wages," states that "[e]ach employee shall be paid wages in full each week before or at quitting time on the Individual Employer's regular pay day unless specific arrangements to the contrary are made in writing between the Individual

Employer and appropriate Local Union of the Union." It further states that "[a]ny dispute regarding waiting time penalties shall be subject to the Grievance Procedures in this Agreement with not more than eight (8) hours pay at the straight time rate charged for any calendar day with a maximum of ten (10) days provided, however, that where the non-payment or delayed payment is willful, repeated, or intentional, the Board of Adjustment may award up to thirty (30) days' waiting penalties." [*See* Staikos Decl. ¶ 5, Exh. A.] Section 18 of the Laborers CBA is entitled "Wages." *Id* at Section 18. It affirms that minimum wages for unionized laborers are set forth depending on their classification in Supplements Nos. 1-7 of the Laborers CBA. *Id*. These minimum rates of pay, as well as other applicable benefits, are further codified in the addendum to the Laborers CBA entitled "2022-2027 Laborers' Master Agreement Associated General Contractors (AGC) Norther California District Council of Laborers Wage & Fringe Benefit Rates" (hereinafter "Laborers Benefit Rates"). [*See* Staikos Decl. ¶ 7, Exh. C.]

24. *Meal Periods*: The Laborers CBA provides for detailed rules concerning the provision of meal periods. Indeed, Section 6 of the Laborers CBA is entitled "Lunch Time, Rest Periods, & Heat Illness Preventative Recovery Period." [*See* Staikos Decl. ¶ 5, Exh. A, Section 6.] It states that "[T]here shall be a regularly established meal period. The meal period shall be one-half hour and shall be scheduled to begin not more than one-half hour before and completed not later than one (1) hour after the midpoint of the regularly scheduled hours of work of each Employee's shift." *Id* at Section 6A. It further accounts for overtime rates that must be paid should an employee perform work during a scheduled meal period.

25. *Rest Periods*: The Laborers CBA provides for detailed rules concerning the provision of rest periods, which are compliant with the legal ten (10) minute requirement. *See* Staikos Decl. ¶ 5, Exh. A, Section 6B ("Employees shall be authorized and shall be permitted to take a total of ten (10) minutes during each four (4) hour segment of their assigned work shift for a rest period. There shall be no

formal organized rest periods during working hours and as far as practicable the break will be taken as near to the middle of each four (4) hour work segment as possible.")

26. _Grievance and Arbitration Procedure_: The Laborers CBA provides a detailed and multi-step process for resolving grievances. Disputes arising on a job shall be first reported to the Employer or the designated Union representative. *See* Staikos Decl. ¶ 5, Exh. A, Section 9(1) ("In the event that a dispute arises on a job, it shall be first reported to the Individual Employer and/or the Business Agent of the appropriate Local Union who shall then attempt to adjust said grievance or dispute at the job site level.") If the dispute is not addressed by the Employer, the Local Union, or the designated Union representative within three (3) days after submission to the Individual Employer, the matter may be escalated to a permanent Board of Adjustment. *Id* at Section 9(3). ("If said grievance or dispute is not satisfactorily adjusted by the appropriate Local Union or otherwise authorized Union Representative and the Individual Employer or his/her representative within three (3) days after submission to the Individual Employer, the matter may be submitted by either party to a permanent Board of Adjustment created for the settlement of such disputes.") The composition and procedures for the Board of Adjustment are set forth in detail in the Laborers CBA. *See* Staikos Decl. ¶ 5, Exh. A, Sections 9(4, 5(a)-(d)). ("The Board of Adjustment shall be composed of two (2) members named by the Union, two (2) members named by the Association and an Impartial Arbitrator. At any point in the proceedings, should the panel be unable to reach a majority vote, the Arbitrator shall participate and his/her decision shall be final and binding.") The parties involved in a dispute are responsible for selecting an impartial arbitrator who will abide by the procedures enumerated in the Laborers CBA. *See* Staikos Decl. ¶ 5, Exh. A, Section 9(5(d)). ("The parties shall select and utilize one (1) permanent impartial arbitrator who is willing to abide by the procedures set forth herein [the Laborers CBA]"). The aforementioned grievance and arbitration procedure prohibits claims involving wage, hour, and associated penalties, from being brought in a court

of law or before any administrative agency. Such claims are required to be resolved pursuant to the Laborers CBA grievance procedure on an individual employee basis, and cannot be brought as a class action or on a representative basis. *See* Staikos Decl. ¶ 5, Exh. A, Section 9(20-22). ("[D]isputes concerning the interpretation or application of this Agreement, all claims and claims for associated penalties arising under the federal Fair Labor Standards Act, the California Labor Code, and Wage Order 16, will be resolved through the procedures set forth in this Section 9; such claims may not be brought in a court of law or before any administrative agency such as the California Labor Commissioner…[A]ll employee disputes concerning violations of, or arising under Wage Order 16, federal, state, and local law concerning wage-hour requirements, wage payments and meal or rest periods, including claims arising under the Fair Labor Standards Act shall be subject to and must be processed by the employee pursuant to the procedures set forth in Section 9 [of the Laborers CBA] as the sole exclusive remedy…Grievances and arbitrations of all statutory disputes shall be brought by the individual employee in an individual capacity only and not as a grievant or class member in any purported class or representative grievance or arbitration proceeding.")

27. *Vacation Pay*: The Laborers CBA provides guidelines and limitations regarding vacation pay. Under the Laborers CBA "employee[s] shall be paid wages in full each week before or at quitting time." *See* Staikos Decl. ¶ 5, Exh. A, Section 10. The rate of vacation accrual is determined in the Laborers CBA supplements and in the Laborers Benefit Rates. *See* Staikos Decl. ¶ 5, Exh. A, Supplements 1-7, Exh. A.

28. Some of Plaintiffs' claims arise exclusively out of the Laborers CBA, as described below.

29. *Generally, as to the claims for (1) failure to pay overtime wages, (2) failure to pay minimum wages, (3) failure to provide meal periods, (4) failure to provide rest periods, (5) waiting time penalties, (6) wage statement violations, (7)*

*failure to timely pay wages, (8) violation of labor code § 2802, and (9) violation of labor code § 404* where a "claim cannot be evaluated apart from the grievance procedure provided by the [collective bargaining] contract, [it] is preempted by federal labor law." *Scott v. Machinists Automotive Trades Dist. Lodge No. 190*, 827 F.2d 589, 594 (September 8, 1987). Plaintiffs contends that Defendant failed to pay overtime wages (Exh. 1 ¶ 15), failed to pay minimum wages (Exh. 1 ¶ 16), failed to provide meal periods (Exh. 1 ¶ 16) and failed to provide rest periods (Exh. 1 ¶ 19). To the extent Plaintiffs' claims for failure to pay wages due upon termination (Exh. 1 ¶ 24), failure to provide accurate wage statements (Exh. 1 ¶ 53), and failure to timely pay wages during employment (Exh. 1 ¶ 18) are based on alleged unpaid minimum, overtime and vacation wages and meal and rest break premiums, these claim cannot be evaluated apart from the foregoing tenets of the Laborers CBA and grievance procedure therein. Plaintiffs' additional labor code allegations regarding Defendant's failure to indemnify employees for all necessary expenditures (Exh. 1 ¶ 26) are also explicitly addressed in the grievance procedure Plaintiffs failed to exhaust. Accordingly, such claims are preempted by federal labor law.

a. *Failure to Follow Grievance Procedure*: Plaintiffs failed to follow the grievance procedure required by the Laborers CBA by failing to present a grievance with respect to their claims regarding alleged labor code violations. Plaintiffs first deviated from the mandatory grievance procedure by failing to present their grievance(s) to either their Employer or their Local Union Representative, as prescribed by the Laborers CBA. *See* Staikos Decl. ¶ 5, Exh. A, Section 9(1). Plaintiffs further failed to allow their Employer or otherwise authorized Local Union Representative to satisfactorily remedy or adjust their submitted grievance within three (3) days of their submission. *Id* at Section 9(3). Plaintiffs further failed to adhere to the grievance procedure by not submitting their grievances to an Impartial Arbitrator in the event that their initial submission was not resolved within the aforementioned three (3) day window. *Id* at Section 9(3-4). With respect to Plaintiffs'

specific causes of action, the Laborers CBA affirms that "all employee disputes concerning violations of, or arising under Wage Order 16, the California Labor Code Sections identified in California Labor Code Section 2699.5 as amended, the California Private Attorney General Act, federal, state, and local law concerning wage-hour requirements, wage payment and meal or rest periods, including claims arising under the Fair Labor Standards Act shall be subject to and must be processed by the employee pursuant to the procedures set forth in Section 9 as the *sole exclusive remedy*." *See* Staikos Decl. ¶ 5, Exh. A, Section 9(21). Plaintiffs' express failure to exhaust the mandatory grievance process is further cemented by the requirement that "claims may not be brought in a court of law or before any administrative agency such as the California Labor Commissioner…Grievances and arbitrations of all statutory disputes shall be brought by the individual employee in an individual capacity only and not as a grievant or class member in any purported class or representative grievance or arbitration proceeding." *Id* at Section 9(20-22). As such, Plaintiffs' claims cannot be evaluated apart from the Laborers CBA's grievance procedure and accordingly are preempted by federal labor law.

30. *As to the claim of failure to pay overtime wages*, such claim is preempted by federal law because (a) Plaintiffs' right to overtime exists solely as a result of the Laborers CBA, and (b) it cannot be evaluated apart from the Laborers CBA's grievance procedure.

a. "By its terms… the default definition of overtime and overtime rates in section 510 does not apply to an employee who is subject to a qualifying CBA." *Curtis*, 913 F.3d 1146, 1154. "If [the employee]'s CBA in this case meets the requirements of section 514, [his] right to overtime 'exists solely as a result of the CBA' and is therefore preempted under § 301." *Id.* (quoting *Kobold v. Good Samaritan Reg'l Med. Ctr.* (9th Cir. 2016) 832 F.3d 1024, 1032). Cal. Lab. Code § 514 requires that a CBA "expressly provide for the wages, hours of work, and working conditions of the employees" and provide "premium wage rates for all overtime hours

worked and a regular hourly rate of pay for those employees of not less than 30 percent more than the state minimum wage."

i. *Wages*: As stated above, the Laborers CBA provides a carefully crafted set of rules outlining the provision of wages under various situations. Sections 18,19, 20A, Supplements 1-7, and the Laborers Benefit Rates establish the default, minimum straight time rate for regular hours of work. *See* Staikos Decl. ¶ 5, Exh. A, Sections 18, 19, 20A Supplements 1-7, Staikos Decl ¶ 7, Exh. C.

ii. *Hours*: Section 20A(1) of the Laborers CBA defines a work day generally as "[e]ight (8) consecutive hours (exclusive of meal period) for straight time rates unless the job or project is on a four-ten (4x10) hour day work week in which case the workday shall be ten (10) consecutive hours (exclusive of meal period) at straight time rates." *See* Staikos Decl. ¶ 5, Exh. A. With respect to a work week generally, Section 20A(2) defines it as "on single shift work and on the first shift of a multiple shift operation, five (5) consecutive days of eight (8) consecutive hours (exclusive of meal period), Monday through Friday." *Id*. The Laborers CBA further provides specific rules for varying types of shift work, weekends and holidays, and other considerations that are dependent on the union members' specific job. (*Id*. at Section 20A.) Section 20A of the Laborers CBA is entitled "Overtime Rates, Hours and Working Conditions." *Id*. It prescribes the terms of overtime in a single work day, a work week, a special single shift, on weekends, and on holidays. (*Id*. At Section 20A(1)-(8).)

iii. *Minimum Wage*: As noted earlier, wages for Union Members are identified in Sections 18, 19 and Supplements 1-7 of the Laborers CBA. *See* Staikos Decl. ¶ 5, Exh. A, Section 18, 19, Supplements 1-7, Staikos Decl. ¶ 7 Exh. C. Per those provisions, the Laborers CBA provides in excess of 30 percent more than the state minimum wage for each year applicable to the Complaint:

31. *As to the claim of failure to provide rest breaks*, such claim is preempted by federal law because (a) the Wage Order's rules regarding rest periods do not apply

to Plaintiffs, (b) the claim is dependent on the CBA, and (c) it cannot be evaluated apart from the Laborers CBA's grievance procedure.

a. Section 11(E) of Wage Order 16, codified at Cal. Code Regs. tit. 8, § 11160 11(E), states that the Wage Order's rules regarding rest periods "shall not apply to any employee covered by a valid collective bargaining agreement if the collective bargaining agreement provides equivalent protection." Here, the Laborers CBA entitles covered alleged aggrieved employees to take a total of ten (10) minutes during each four (4) hour segment of their assigned work shift for a rest period. Second rest periods may be added to the end of the meal period or workday when working conditions so dictate. Furthermore, employees who work more than ten (10) hours shall be authorized and permitted three ten (10) minute rest periods. Staikos Decl. ¶ 5, Exh. A, Section 6B. The Laborers CBA thus encompasses the core requirements of Wage Order 16 and leads to preemption.

b. Where a collective bargaining agreement directly addresses "when and for how long an employee may take meal and rest periods," such claims are dependent upon the collective bargaining agreement. *Coria v. Recology, Inc.*, 63 F.Supp.3d 1093, 1099, (N.D.Cal. Aug. 7, 2014) (finding that the plaintiff's overtime claim, which was based on meal and rest period claims, was preempted, as were other claims which were "inextricably intertwined with plaintiff's meal and overtime claims"). Here, as addressed above, the CBA addresses when and for how long an employee may take rest periods, making Plaintiffs' rest period claim dependent upon the CBA.

c. Where a "claim cannot be evaluated apart from the grievance procedure provided by the [collective bargaining] contract, [it] is preempted by federal labor law." *Scott*, *supra*, at 594. Plaintiffs failed to follow the grievance procedure required by the Laborers CBA Section 9 by failing to submit a grievance to their Employer or Local Union Representative with respect to the rest break claim. As such, this claim cannot be evaluated apart from the Laborers CBA's grievance

procedure and accordingly is preempted under Section 301.

32. *__As to the claim of failure to pay for all hours worked__*, such claim is preempted by federal law because (a) it is derivative of Plaintiffs' overtime wage and meal break claims, and (b) it cannot be evaluated apart from the Laborers CBA's grievance procedure.

a. Plaintiffs contends that Defendant failed to compensate them for overtime wages and failed to provide 30-minute, duty-free meal periods. Exh. 1 ¶ 18. To the extent this claim is derivative of overtime wage and meal break claims which are properly subject to federal jurisdiction, this Court would have Section 301 preemption jurisdiction over this derivative claim. See, *e.g., Giles v. Canus Corp.*, No. 22-CV-03097-MMC, 2022 U.S. Dist. LEXIS 146789, at *14 (N.D. Cal. Aug. 16, 2022).

b. Where a "claim cannot be evaluated apart from the grievance procedure provided by the [collective bargaining] contract, [it] is preempted by federal labor law." *Scott*, *supra*, at 594. Plaintiffs failed to follow the grievance procedure required by the Laborers CBA Section 9 by failing to submit a grievance to their Employer or Local Union Representative with respect to the rest break claim. As such, this claim cannot be evaluated apart from the Laborers CBA's grievance procedure and accordingly is preempted under Section 301.

33. *__As to the claim of failure to pay wages due upon termination__*, such claim is preempted by federal law because the merits of Plaintiffs' claim require interpretation of the Laborers CBA and it cannot be evaluated apart from the Laborers CBA's. Where a "claim cannot be evaluated apart from the grievance procedure provided by the [collective bargaining] contract, [it] is preempted by federal labor law." *Scott v. Machinists Automotive Trades Dist. Lodge No. 190*, 827 F.2d 589, 594. Plaintiffs failed to follow the grievance procedure required by the Laborers CBA Section 9 by failing to submit a grievance to Western Traffic Control or the designated Local Union Representative with respect to the wages upon separation claim. As such,

the wages upon separation claim cannot be evaluated apart from the Laborers CBA's grievance procedure and accordingly is preempted by federal labor law. Where a "claim cannot be evaluated apart from the grievance procedure provided by the [collective bargaining] contract, [it] is preempted by federal labor law." *Scott*, *supra*, at 594. Plaintiffs failed to follow the grievance procedure required by the Laborers CBA Section 9 by failing to submit a grievance to their Employer or the Local Union Representative with respect to the wage

34. <u>*As to the claim of failure to provide accurate itemized wage statements*</u>, such claim is preempted by federal law because (a) it is derivative of Plaintiffs' minimum and overtime wage claims, (b) it cannot be evaluated apart from the Laborers CBA's grievance procedure.

a. Plaintiffs contends that Western Traffic's wage statements did not accurately itemize gross wages earned, total hours worked, net wages, all applicable hourly rates in effect, and the corresponding number of hours worked at each hourly rate. *See* Exh. 1 ¶ 21. To the extent this claim is derivative of minimum and overtime wage claims which are properly subject to federal jurisdiction, this Court would have Section 301 preemption jurisdiction over this derivative claim. See, *e.g., Giles*, 2022 U.S. Dist. LEXIS 146789, at *14.

b. Where a "claim cannot be evaluated apart from the grievance procedure provided by the [collective bargaining] contract, [it] is preempted by federal labor law." *Scott*, *supra*, at 594. Plaintiffs failed to follow the grievance procedure required by the Laborers CBA Section 9 by failing to submit a grievance to their Employer or the Local Union Representative with respect to the wage statement claim. As such, this claim cannot be evaluated apart from the Laborers CBA's grievance procedure and is therefore preempted under Section 301.

///

///

///

**B. Resolution of Other of Plaintiffs' Claims on Behalf of Themselves as Unionized Allegedly Aggrieved Employees Will Require Substantial Interpretation of the Laborers CBA and Its Various Provisions**

35. In respects other than those describe above, federal jurisdiction is proper because this Court will necessarily need to interpret the provisions of the Laborer's CBA, as the Court cannot simply "look" to state law to resolve Plaintiffs' artfully plead claims on behalf of themselves as unionized alleged aggrieved employees

36. Under step two of the *Burnside* analysis, a state law claim is subject to Section 301 jurisdiction where "a plaintiff's state law right is substantially dependent on analysis of [the CBA]," *Curtis,* 913 F.3d at 1153, a question that turns on whether the claim cannot be resolved by simply "look[ing] to" versus "interpreting" the CBA, *Kobold v. Good Samaritan Reg'l. Med. Ctr.,* 832 F.3d 1024, 1033 (9th Cir. 2016) (internal quotation marks and citations omitted). Step two accounts for Section 301's expansion "beyond cases specifically alleging contract violation to those whose resolution 'is substantially dependent upon analysis of the terms of an agreement made between the parties to labor contract.'" *Cramer v. Consol. Freightways Inc.,* 255 F.3d 683, 689 (9th Cir. 2011) (en banc) (quoting *Allis-Chalmers,* 471 U.S. at 220. Put differently, "a state law claim will be preempted if it is so 'inextricably intertwined' with the terms of a labor contract that its resolution will require judicial interpretation of those terms." *Madison v. Motion Picture Set Painters and Sign Writers Local 729,* 132 F.Supp.2d 1244, 1251 (C.D. Cal. 2000).

37. As to the claim of failure to pay wage upon separation, the underlying factual foundation for the wages upon separation claim mirrors Plaintiffs' liability for the compensation claim. That is, they claim there were unpaid wages due for rest period premium wages. The rest period claims have been brought for Western Traffic's alleged failure to provide Plaintiffs with rest periods (Exh. 1 ¶ 21). Therefore, to the extent Plaintiffs' PAGA claim is related to Western Traffic's alleged

failure to pay wages upon separation, the reasons identifying Section 301 jurisdiction above also apply here to support federal jurisdiction under step two of the Burnside analysis.

38. As to the claim of failure to provide accurate itemized wage statements, the underlying factual foundation for the wage statement claim mirror's Plaintiffs' liability theory for the minimum and overtime wage claims. See, e.g. Exh. 1, ¶ 21. That is, he claims the wage statements reflected manipulated hours. See Exh. 1, ¶ 68. Therefore, to the extent Plaintiffs' PAGA claim is related to Western Traffic's alleged failure to provide accurate itemized wage statements, the reasons identifying Section 301 jurisdiction above also apply here to support federal jurisdiction under step two of the Burnside analysis.

### C. <u>The Court Has Original Jurisdiction over Plaintiffs' PAGA Claim Because It Has Original Jurisdiction over the Predicate Claims</u>

39. "If [the Court] has original jurisdiction over [a plaintiff's] predicate claims, it also has original jurisdiction over Plaintiff's PAGA claim." *Radcliffe v. San Diego Gas & Elec. Co.*, 519 F.Supp.3d 743, 748) (denying the plaintiff's motion to remand since the court had jurisdiction over plaintiff's overtime and meal period claims, and therefore his PAGA claim); see *Linebarger v. Graphic Packaging Int'l, LLC*, No. SACV-20-00309-JVS-JDEx, 2020 U.S.Dist.LEXIS 71054, 2020 WL 1934958, at *5 (C.D. Cal. 2020) (finding PAGA claims are within a federal court's original jurisdiction when the underlying labor claims on which the PAGA claims rely are preempted under the LMRA); *Martinez v. Omni Hotels Mgmt. Corp.*, No. 20-cv-1924-MMA (BLM), 2021 U.S.Dist.LEXIS 10521, 2021 WL 196509, at *4 n.3 (S.D. Cal. 2021) ("To find otherwise would allow for [the] artful pleading of PAGA claims – premised on Labor Code violations – to circumvent congressional intent regarding collective bargaining agreements and preemption.

40. As discussed above, the Court has subject matter jurisdiction over Plaintiffs' predicate claims related to wages due upon termination, overtime wages,

rest breaks, and wage statements. Thus, the Court has jurisdiction over Plaintiffs' PAGA claim.

## V. SUPPLEMENTAL JURISDICTION

41. To the extent there are claims alleging California Labor Code violations that do not arise under Section 301, those claims remain within this Court's supplemental jurisdiction per 28 U.S.C. § 1367(a) in that those claims are so related to the federal causes of action that they form part of the same case or controversy under Article III of the United States Constitution. *See Buck v. Cemex, Inc.,* No. 1:13-CV-00701-LJO, 2013 U.S. Dist. LEXIS 124111, at *17 (E.D. Cal. Aug. 29, 2013) (plaintiff's additional claims of failure to provide accurate wage statements, failure to timely pay all final wages and unfair competition came within the supplemental jurisdiction of the court even if only tangentially involved with the CBA); *see also Coria v. Recology, Inc.,* 63 F. Supp. 3d 1093, 1100 (N.D. Cal. 2014) (recognizing that plaintiff's additional state law claims under California statutory and common law, including various provisions of the Labor Code and Wage Orders, all "derive from a common nucleus of operative fact … that a plaintiff would ordinarily be expected to try them in one judicial proceeding."). Thus this action, including violations of labor code § 227.3 and unfair competition, is removable in its entirety.

## VI. TIMELINESS OF REMOVAL

42. This Notice of Removal is filed within the thirty (30) day limit for removal set forth in 28 U.S.C. § 1446(b)(3). Removal is timely because Defendant removed within 30 days of the date Plaintiffs' service of the Complaint was properly effectuated.

43. Service of a summons is deemed complete on the 10th day after the mailing as set forth Cal Code Civ Proc § 415.20. Time to remove is triggered by effectuation of formal service. *See Murphy Bros. v. Michetti Pipe Stringing*, 526 U.S. 344, 347-348; *Medrano v. Genco Supply Chain Solutions*, 2011 U.S. Dist. LEXIS 2315, *46-48; *Doijode v. Sears*, 2006 U.S. Dist. LEXIS 3186, *8. Service of summons

was mailed on July 29, 2025, rendering formal service properly effectuated on August 8th, 2025. As such, removal is timely.

## VII. NOTICE OF REMOVAL TO ADVERSE PARTY AND STATE COURT

44. Contemporaneously with the filing of this Notice in this Court, written notice of such filing will be provided to Plaintiffs' counsel of record.

45. A copy of the Notice of Removal will also be filed with the Clerk of the Superior Court of the County of Sonoma.

## VIII. CONCLUSION

46. For all of the foregoing reasons, this Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1441(a), and removal is therefore proper under 28 U.S.C. § 1441(a).

**WHEREFORE**, Defendant respectfully prays that this Notice of Removal be deemed good and sufficient, and that Case No. 25CV04767 be removed from the Superior Court of California, County of Sonoma, to the docket of this Honorable Court.

DATED: September 8, 2025

**O'HAGAN MEYER LLP**

By: */s/ Spyros Staikos*

Efthalia S. Rofos
Spyros Staikos
Attorneys for Defendant,
WESTERN TRAFFIC CONTROL, INC.